UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TELIMATHY BARNETT        CIVIL ACTION

                         NO. 12-CV-326-JWD-SCR
VERSUS

JAMES L. BULLOCK
ET AL.

## RULING AND ORDER

Before the Court is Defendant James Bullock's (hereinafter "Bullock") Motion for Summary Judgment. (Doc. 42.) Plaintiff has filed an Opposition. (Doc. 46.) Defendant has replied. (Doc. 47.) Oral argument is not necessary.

Defendant Bullock claims that he is entitled to summary judgment because, at the time of the single vehicle accident which is the basis of this suit, Plaintiff Telimathy Barnett ("Barnett") was a co-employee of Defendant Bullock and therefore Bullock is immune from a tort suit (LSA-R.S. 23:1032). (Doc. 42-1, p. 4.) Plaintiff claims that he was not a co-employee of Bullock and therefore the Defendant is subject to being sued as a third-party tortfeasor. (Doc. 46, p. 1.)

Defendant urges an additional basis for summary judgment: i.e. that he was confronted with a sudden emergency and therefore is not liable for the accident. (Doc 42-1, p. 5.) Plaintiff, on the other hand, alleges that there was no sudden emergency that justified Defendant's loss of control of the vehicle or, at the very least, there are material issues of fact regarding same. (Doc. 46, p. 4.)

The question raised by this motion is whether there are genuine disputes of material fact regarding Plaintiff's status and the circumstances of the accident such that summary judgment is inappropriate. Fed. R. Civ. P. 56(a). The Court finds that there are material issues of fact on both the issue of Plaintiff's status and the circumstances of the accident and therefore denies the motion for

summary judgment.

*Background and Contentions of the Parties*

On June 16, 2011, at approximately 2 a.m., Defendant Bullock was driving a tractor-trailer east on Interstate 20 in Lincoln Parish, Louisiana. (Affidavit of James Bullock, Doc. 42-4, pp. 1-2.) At that time, Bullock lost control of the vehicle which swerved off the road into a ditch. (Affidavit of James Bullock, Doc. 42-4, p. 2) At this time, Plaintiff Barnett was in a sleeper birth located in the tractor. (*Id*.) Plaintiff claims that he was injured in the accident. (Doc. 1, pp. 2-3.)

The tractor involved in the accident was a 2007 Volvo (designated as Unit 1415) which was owned by Ferry Transportation, Inc. (hereinafter "Ferry"). (Doc. 42-1, pp. 1-2.) On June 6, 2011, Bullock entered into a Transportation Services Agreement with Ferry in which he agreed to lease the tractor from Ferry. (Doc. 42-4, pp. 5-13.) The contract specified that Bullock was "an independent contractor engaged in the business of transporting freight by motor vehicle on behalf of, or pursuant to operating agreements with private, contract, and carriers or shippers...." (Doc. 42-4, p. 5.) Ferry agreed to pay Bullock by the load. (Doc. 42-4, p. 6.)

Bullock offered Plaintiff the opportunity "to contract" to co-drive Unit 1415 (Doc. 34, p. 98), agreeing to pay Plaintiff $900.00 if he worked for a full week but would pay less if Plaintiff took days off. (Doc. 34, p. 12.) On the two occasions that Plaintiff was called to assist driving Unit 1415, the call was made by Bullock and not Ferry. (Doc. Doc. 34, p. 55.) Yet, Ferry's identification sheet and beneficiary form listed Plaintiff as "contract driver...contracted by: Ferry Transportation." (Doc. 32-2, p. 50.) Bullock did not provide Plaintiff with any tax forms in connection with the work. (Doc. 34, p. 102.)

In addition to the tractor, Ferry provided a fuel card, keys to the truck, a BOL stamp, a cheater bar, two straps, a camera and Penske packets to Bullock. (Doc. 42-4, p. 2.) Ferry also

provided the trailer and the location of both pick-ups and deliveries. (*Id.*) Ferry would communicate the location of the next load by way of a computer system called "Quill.com." (Doc. 34, pp. 107-108.)

The contract specified that Bullock had "and shall retain all responsibility for hiring, and employing, at [Bullock's] expense, all necessary drivers, driver-helpers and laborers, and shall (within the limitations imposed by law) set and pay their wages, and prescribe their hours and working conditions, including, the adjustment of grievances, supervising, training, discipline, and discharge of all such drivers, driver-helpers, and laborers. Such driver, driver-helpers and laborers are and shall remain the employees of [Bullock]." (Doc. 42-4, p. 7.)

Yet, other than the agreement to pay $900 per week (less if he worked less), nowhere in Bullock's affidavit does he state that he controlled or had the right to control the details of Plaintiff's work nor has he pointed to any other evidence in the record addressing this issue. Nor does Bullock point to any evidence showing that he actually "prescribed [Plaintiff's] hours and working conditions, including, the adjustment of grievances, supervising, training, discipline, and discharge...." (Doc. 42-1, p. 7.) Indeed, Bullock's affidavit simply says that he and Plaintiff "worked as a driving team" for Ferry. (Doc. 42-4, p. 1.)

Defendant claims that Plaintiff is either an employee of Defendant or of Ferry and, in either event, Plaintiff's exclusive remedy is workers compensation. (Doc. 42-1, p. 1.) Plaintiff claims, on the other hand, that he was an independent contractor and not an employee of either Bullock or Ferry. (Doc. 46, p. 1.)

*Standard to Be Applied*

Summary judgment shall be granted when there are no genuine issues of material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex v. Carrett*,

477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*. at 248-49, 106 S.Ct. 2505. In order to grant a motion for summary judgment, the Court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However, if the dispositive issues is one on which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy the burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Id*. at 325, 106 S. Ct. 2548; *Lavaspere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referencing evidence, set out specific facts showing that the genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id*. at 325, 106 S. Ct. 2548; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winters v. Highlands*, 569 F.2d 297, 299 (5th Cir. 1978). "'[T]he choice between permissible inferences is for the trier of facts.'" *Nunez*

v. *Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978), quoting, *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 862 (5th Cir. 1959), cert. denied, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960). Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts. *Nunez*, 572 F.2d at 1124.

*Analysis of Employment Status Issue*

Barnett is from Mississippi. (Doc. 1, ¶ 1.) Bullock is from Louisiana and the accident occurred in Louisiana. (*Id.*) Both Bullock and Barnett assume that Louisiana law applies and, in the context of the issues raised by this motion,[1] the Court finds that this assumption is correct. La. C.C. Arts. 3544 and 3547; *Duhon v. Union Pacific Resources Co.*, 43 F.3d 1011 (5th Cir. 1995).

Louisiana law specifies that worker's compensation is an employee's exclusive remedy against his employer and therefore immunizes an employer from tort suits by its employees. LSA-R.S. 23:1032; *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373 (5th Cir. 2006). Except in special circumstances, an independent contractor is not considered an employee and is therefore free to sue in tort. LSA R. S. 23:1021(7).

While the rule is clear, the application of the rule is less so since it is not always easy to distinguish between an employee and an independent contractor. The "distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis." *Chaisson v. Louisiana Rock Monsters, LLC*, 140 So.3d 55, 57 (La. App. 4th Cir. 2014), quoting *Tate v. Progressive Sec. Ins. Co.*, 4 So.3d 915, 916 (La. App. 4th Cir. 2009). See also *Tower Credit, Inc. v. Carpenter,* 825 So.2d 1125, 1129 (La. 2002)*; Kibodeaux v. Progressive Ins. Co.* 4 So.3d 222, 225 (La. App. 3d Cir. 2009).

---

[1] In a related motion involving the issue of insurance coverage (Doc. 32), mover The Mississippi Guaranty Association argues that Mississippi law applies but that, in any event, it is a "false conflict" since as to the issues involved in that motion, the law is the same in Louisiana and Mississippi. (Doc 32, p. 10).

In *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 114-115; 262 So.2d 385, 390-391 (1972), the Louisiana Supreme Court developed factors to consider in determining whether or not a worker is an employee or an independent contractor:

> 1) Is there a valid contract between the parties?
>
> 2) Is the work being done of an independent nature such that the contractor may employ non-exclusive means in accomplishing the work?
>
> 3) Does the contract call for specific piece work as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered?
>
> 4) Is there a specific price for the overall undertaking agreed upon?
>
> 5) Is the duration of the work for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach?

While *Hickman*[2] involved the question of whether a worker was an employee for purposes of imposing tort liability on the alleged employer, the factors have also been deemed relevant in determining whether or not a worker is an employee for purposes of worker's compensation. *Chaisson*, 140 So.3d at 57-58.

No single factor is determinative but the "essence of the employer-employee relationship is the right to control." *Hillman v. Comm-Care, Inc.*, 805 So.2d 1157, 1162 (La. 1/15/02).[3] An employee is "someone who offers his personal services for a price and must submit to the control of his physical conduct as well as of his time." *Kibodeaux*, 4 So.3d at 225. The factors to be considered in determining right to control are "1) selection and engagement, 2) payment of wages,

---

[2]*Id.*

[3] The right to control the work of the worker has been described as the "single most important factor..."*Poynor v. Cure*, 443 So.2d 1151, 1155 (La. App. 5th Cir. 1983, writ denied, 446 So. 2d 1225 (1984), citing *Roberts v. State, Through the Louisiana Health and Human Resources Administration*, 404 So. 2d 1221, 1225 (La. 1981).

3) power of dismissal and 4) power of control." *Hillman,* 805 So.2d at 1162. "None of the factors alone is determinative. Rather, the court must consider the totality of the circumstances." *Chaisson*, 140 So. 3d at 58 (citations omitted). It is also important that typically, the power or right to control must be of the *physical details of the work* and not merely the end result. *Anderson v. New Orleans Public Service, Inc*., 583 So.2d 829, 832 (1991) quoting *Blanchard v. Ogima,* 215 So.2d 902, 906 (La. 1968) (emphasis added).

The definition of independent contractor under Louisiana's worker's compensation statute is especially instructive in the present case:

> "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal *as to results of his work only, and not as to the means by which such result is accomplished*, and are expressly *excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor* by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. *The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, cooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter.*

LSA R.S. 23:1021(7) (emphasis added).

In terms of the *Hillman*[4] factors regarding right to control, certain factors in the record weigh in favor of employee status. Barnett was contracted by Bullock to co- drive unit 1415 and agreed to pay him by the week unless Barnett worked less than that amount of time in which event his recompense would be reduced. (Doc. 34, p. 12.) However, while the contract between Ferry and Bullock allowed Bullock to *"*prescribe their hours and working conditions, including, the adjustment of grievances, supervising, training, discipline, and discharge of all such drivers, driver-helpers, and laborers of Barnett," (Doc. 42-4, p. 7), that contract is not binding as between Bullock and Barnett.

---

[4]805 So.2d at 1162.

Furthermore there is nothing in the record to suggest that, in the contract struck between Bullock and Barnett, Bullock had any power or responsibility to "supervise, train [or] discipline" Barnett or, most importantly, to dictate the details of Barnett's work. As is made clear by LSA R.S. 23:1021(7), the normal activities of a truck driver are by statute not considered manual labor and a truck driver will not be considered an employee if his alleged employer controls "the results of his work only, and not...the means by which such result is accomplished." LSA R.S. 23:1021(7).

Other factors weighing in favor of independent contractor status are Ferry's identification sheet and beneficiary form listing Plaintiff as a "contract driver...contracted by: Ferry Transportation." (Doc. 32-1, p. 50.) Furthermore, Bullock did not provide Plaintiff with any tax forms in connection with the work (Doc. 34-1, p. 104) and did not withhold taxes from his compensation. (Doc. 34-1, pp. 100, 104.)[5] Indeed, Bullock's affidavit offered in support of his motion doesn't describe Barnett as an employee but simply says that he and Plaintiff Barnett "worked as a driving team" for Ferry (Doc. 42-4, p. 1), suggesting that Bullock and Barnett were co-independent contractors for Ferry.

Bullock's argument that Barnett was an employee of Ferry is even more tenuous. Ferry did not hire Bullock and, as mentioned above, only approved him as a contract driver. There is no suggestion that Ferry had any right or power to directly control the details of Barnett's work. Ferry certainly did not do so.

In sum, there is a genuine dispute on material issues of fact - as well as inferences to be drawn from those facts - on the question of Plaintiff Barnett's status as employee or independent contractor that precludes summary judgment.

---

[5] Barnett testified that Bullock said "you can contract for me and I'll pay you $900 cash if you can ride the whole week with me." (Doc. 34-1, p. 100.)

*Analysis of Liability Issue*

Defendant also argues entitlement to summary judgment on the basis of the sudden emergency doctrine. *Inglinsky v. Player,* 2010 WL 4925000 (M.D. La. 2010) quoting *Hickman v. Southern Pacific,* 262 La. 102, 112-113; 262 So.2d 385, 389 (1972). Defendant states that he noticed deer in the right-hand travel lane of Interstate 20, eastbound. (Doc. 42-1, p. 3.) He claims he then merged from the right lane into the left lane in an attempt to avoid the deer. (Doc. 42-1, p. 3.) As he approached, traveling in the left lane, the deer ran into the left side of his tractor, causing the tractor and trailer to swerve off the roadway into a ditch. (Doc 42-1, p.5; Doc 42-4, p. 2).

In his opposition, Plaintiff counters that Defendant first told him that he had seen deer and swerved to avoid hitting it and lost control but then changed his story to say that he actually hit a deer. (Doc 34-1, pp. 91-92.) Plaintiff testified that after the accident, there was no blood or damage or any other evidence of having hit or been hit by a deer. (Doc. 34-1, p. 92.) Defendant does not put forward any corroborating evidence of his account but, in any event, there are clearly issues of fact, including (given the varying accounts given by Defendant) whether there was a sudden emergency at all. Under these circumstances, the motion for summary judgment should be denied.

*Conclusion*

For the foregoing reasons, the Motion for Summary Judgment filed by James Bullock (Doc. 42) is DENIED.

Signed in Baton Rouge, Louisiana, on <u>January 5, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**