# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TELIMATHY BARNETT**                        **CIVIL ACTION**

                                             **NO. 12-CV-326-JWD-SCR**

**VERSUS**

**JAMES L. BULLOCK**
**ET AL.**

## RULING AND ORDER

Before the Court is Defendant Mississippi Insurance Guaranty Association's (hereinafter "MIGA") Motion for Summary Judgement. (Doc. 32.) Plaintiff has filed an Opposition. (Doc. 34.) Defendant MIGA has replied. (Doc. 37.) Oral argument is not necessary.

*Background and Contentions of the Parties*

On June 16, 2011, at approximately 2 a.m., Defendant James Bullock (hereinafter "Bullock") was driving a tractor-trailer east on Interstate 20 in Lincoln Parish, Louisiana. (Affidavit of James Bullock, Doc. 42-4, pp. 1-2.) At that time, Bullock lost control of the vehicle which swerved off the road into a ditch. (Affidavit of James Bullock, Doc. 42-4, p. 2.) At this time, Plaintiff Telimathy Barnett was in a sleeper birth located in the tractor. (*Id*.) Plaintiff claims that he was injured in the accident. (Doc. 1, pp. 2-3.)

The tractor involved in the accident was a 2007 Volvo (designated as Unit 1415) which was owned by Ferry Transportation Inc. (hereinafter "Ferry"). (Doc. 42-1, pp. 1-2.) On June 6, 2011, Bullock entered into a Transportation Services Agreement with Ferry in which he agreed to lease the tractor from Ferry. (Doc. 42-4, pp. 5-13.) The contract specified that Bullock was "an independent contractor engaged in the business of transporting freight by motor vehicle on behalf of, or pursuant to operating agreements with private, contract, and carriers or shippers...." (Doc. 42-

4, p. 5.) Ferry agreed to pay Bullock by the load. (Doc. 42-4, p. 6.)

Bullock offered Plaintiff the opportunity "to contract" to drive Unit 1415 (Doc. 34, p. 98), agreeing to pay Plaintiff $900.00 if he worked for a full week but would pay less if Plaintiff took days off. (Doc. 34, p. 12.) On the two occasions that Plaintiff was called to assist driving Unit 1415, the call was made by Bullock and not Ferry. (Doc. Doc. 34, p. 55.) Yet, Ferry's identification sheet and beneficiary form listed Plaintiff as "contract driver" "contracted by: Ferry Transportation." (Doc. 32-2, p. 50.) Bullock did not provide Plaintiff with any tax forms in connection with the work. (Doc. 34, p. 102.)

In addition to the tractor, Ferry provided a fuel card, keys to the truck, a BOL stamp, a cheater bar, two straps, a camera and Penske packets to Bullock. (Doc. 42-4, p. 2.) Ferry also provided the trailer and the location of pick-up and delivery locations. (*Id*.) Ferry would communicate the location of the next load to by way of a computers system called "Quill.com." (Doc. 34, pp. 107-108.)

The contract specified that Bullock had "and shall retain all responsibility for hiring, and employing, at [Bullock's] expense, all necessary drivers, driver-helpers and laborers, and shall (within the limitations imposed by law) set and pay their wages, and prescribe their hours and working conditions, including, the adjustment of grievances, supervising, training, discipline, and discharge of all such drivers, driver-helpers, and laborers. Such driver, driver-helpers and laborers are and shall remain the employees of [Bullock]." (Doc. 42-4, p. 7.)

Yet, other than the agreement to pay $900 per week (less if he worked less), nowhere in Bullock's affidavit does he state that he controlled or had the right to control the details of Plaintiff's work nor has he pointed to any other evidence in the record addressing this issue. Nor does Bullock point to any evidence showing that he actually "prescribed [plaintiff's] hours and working

conditions, including, the adjustment of grievances, supervising, training, discipline, and discharge...." (Doc. 42-4, p. 7.) Indeed, Bullock's affidavit simply says that he and Plaintiff "worked as a driving team" for Ferry. (Doc. 42-4, p. 1.)

Gramercy Insurance Company ("Grammercy") issued a Motor Carrier Liability policy ("policy") to Ferry with Ferry as its main insured. (Doc. 32, p. 25.) The policy was in force at the time of the accident and provided Motor Carrier Liability coverage on vehicles Ferry leased, hired, rented or borrowed. (Doc. 32, p. 25.) The Gramercy policy is a public liability policy designed for use by motor carriers in the interstate trucking industry to comply with the insurance requirements under the Motor Carrier Safety Act (hereinafter "MCSA"). 49 U.S.C.A. § 31131. The policy contained an Endorsement for Motor Carrier Policies of Insurance for Public Liability under Section 29 and 30 of the Motor Carrier Act of 1980. (Doc. 32-2, p. 42.)

In September 2013, Gramercy was placed in liquidation in Texas. (Doc. 25.) Mississippi Insurance Guaranty Association ("MIGA") undertook the obligations of Gramercy in this claim, subject to statutory limitations, and has moved for summary judgment alleging that there is no coverage under the Gramercy policy. Specifically, Gramercy alleges that Plaintiff is excluded from coverage as an employee of Gramercy's insureds Ferry and/or Bullock and/or as a fellow employee of Bullock. MIGA also moves for summary judgment claiming it has no duty to defend Bullock.

*Standard Regarding Motion for Summary Judgment*

Summary judgment shall be granted when there are no genuine issues of material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex v. Carrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* at 248-49, 106 S.Ct. 2505. In order to grant a motion for summary judgment, the Court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However, if the dispositive issues is one on which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy the burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Id.* at 325, 106 S. Ct. 2548; *Lavaspere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referencing evidence, set out specific facts showing that the genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id.* at 325, 106 S. Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winters v. Highlands*, 569 F.2d 297, 299 (5th Cir. 1978). "'[T]he choice between permissible inferences is for the trier of facts.'" *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978), quoting, *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 862 (5th Cir. 1959), cert. denied, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960). Where a jury is called for, the litigants are entitled to have the jury choose between conflicting

inferences from basic facts. *Nunez*, 572 F.2d at 1124.

*Applicable Law*

Jurisdiction in this case is based on diversity of citizenship between the parties. 28 U.S.C. §1332. If there is a choice of law issue, this court must utilize this forum's choice of law rules. *Abraham v, State Farm Mutual Ins. Co.*, 465 F.3d 609, 611 (5th Cir. 2006); *Smith v. Waste Management, 407 F.3d 381* (5th Cir 2005).

When the law of two states, potentially applicable to a given case, is the same, there is no reason for the Court to make a choice of law decision. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F. 3d 616 (5th Cir. 2005), citing *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) (when the substantive decisional law of all relevant jurisdictions is the same, a court need not "go through the motions" of making a choice of law); see also *Traveler's Ins. Co. v. McDermott, Inc.*, No. CIV.A. 01-3218, 2013 WL 21999354, *7 (E.D. La. 2003) (where the laws of Louisiana and Connecticut were in harmony, no choice of law analysis was necessary). Only if the law of the two states is different must this Court conduct a choice of law analysis.

In this case, both Plaintiff and Mover agree that there is no difference in the law of Mississippi and Louisiana as it pertains to the interpretation of insurance contracts. (Doc. 32, p. 10; Doc 34, pp. 5-6.) Thus, there is no need for this Court to engage in a conflicts analysis. To the extent that such an analysis might be required, Mississippi interests predominate since Mississippi was the state where the policy was negotiated and formed (Doc 32, p. 12), where the insurance contract was delivered to Ferry (Doc. 32, p. 29), where Ferry was incorporated (Doc. 32, p. 26), where the subject vehicle was licensed and garaged (Doc. 32, p. 12), and where Plaintiff resided at the time of the accident (Doc 32., p. 29). *Am. Elec. Power Co., Inc. v. Affiliated F.M. Insurance Co.*, 556 F.3d 282

(5th Cir. 2009); *Rescue, Inc. v. Chem. Distributors, Inc.*, 927 F.Supp. 190 (M.D. La. 1996).

*Coverage*

MIGA claims that Plaintiff is excluded from coverage because he is either an employee or fellow employee of an insured. In either case, there is no coverage.

¶II, Liability Coverage, ¶B, Exclusions, states this insurance does not apply to:

\*\*\*

4.  Employee Indemnification and Employers Liability

    "Bodily injury" to:

    a. An "*employee" of the "insured*" arising out of and in the course of:

    (1) employment by the "insured" or
    (2) performing the duties related to the conduct of the "insured's" business…

    \*\*\*

    This exclusion applies:

    (1) whether the "insured" may be held liable as an employer or in any other capacity; and
    (2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

    \*\*\*

5.  Fellow Employee

    "Bodily injury" to:

    a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to conduct your business."

    (Doc. 32-2, p. 47.)

In this case, under the "separation of insured" clause in the insurance contract, the insured is Bullock, not Ferry, since Bullock is the party against whom the claim was made. *Ooida Risk*

*Retention Group, Inc. v. Williams*, 579 F.3d 469, 573 (5th Cir. 2009). Thus, in order for the exclusion to apply, Barnett must have been an "employee" and/or a "fellow employee" of Bullock. The MSCA and its attendant regulations govern the terms under insurance policies designed to comply with federal requirements for motor carriers, including defining the meaning of the terms "employer" and "employee". *Ooida*, 579 F.3d at 473-474.

49 C.F.R. §390.5, enacted pursuant to the authority of the MSCA defines "employee" as "an individual other than an employer who..., in the course of his or her employment "directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including *an independent contractor* while in the course of operating a commercial vehicle)..." *Id*. (emphasis added).

This definition is broader than the Louisiana definition of "employee" because it specifically includes independent contractors.[1] The questions of fact as to whether Barnett was a traditional employee or an independent contractor are nor relevant here and, thus, unlike the motion brought by Bullock individually, these disputed facts do not preclude summary judgment.

But Plaintiff argues that he was not an employee, even under this broadened definition, because an independent contractor is considered an employee only "while in the course of *operating* a commercial motor vehicle..." Plaintiff argues he was not "operating" the tractor because he was in the sleeper at the time of the accident and thus cannot be considered an employee. This argument has been directly rejected by the Fifth Circuit decision in *Ooida*, 579 F.3d at pp. 476, 477, which held that the tandem driver killed while in the sleeping berth of the tractor being driven by someone else was "operating" the motor vehicle within the meaning of the definition of "employee." See

---

[1] This Court denied Bullock's Motion for Summary Judgment (Doc. 42) because there are questions of fact regarding Barnett's status as an employee versus independent contractor. (Doc. 50)

also, *Consumer County Mutual Ins. Co. v P.W.& Sons Trucking, Inc.*, 307 F.3d 362, 367, n. 8 (holding that a tandem driver injured while in sleeper birth was an employee in the course of his employment).

At the very least, Plaintiff argues, the term "operating" is ambiguous and under both Mississippi and Louisiana principles governing the interpretation of insurance contracts, ambiguities must be resolved in favor of coverage. (Doc. 34, pp. 5-6.) This same argument was made and rejected in *Consumers County Mutual Insurance Co. v. P.W. & Sons Trucking Inc.*, 307 F.3d 362 (5th Cir. 2002).

> In the alternative, PWS argues that the term employee in the insurance policy is ambiguous. As a result, PWS contends that we should interpret it against the insurer... Because we believe the term employee is not ambiguous, but clearly refers to employees withing the meaning of §390.5, this argument is without merit.

*Consumers County Mutual*, 307 F. 3d at 367 (internal citations omitted).

Plaintiff counters that *Simpson v. Empire Truck Lines, Inc.*, 571 F.3d 475 (5th Cir. 2009) has changed the law as enunciated in these two cases. Plaintiff misreads *Simpson* which merely held that the definitions of terms "employer" and "employee" found in the MSCA regulations were not binding in the context of a Texas worker's compensation dispute. The change in the law discussed in *Simpson*, making clear that the definitions in the MSCA regulations are not intended to affect these same terms under state law, is irrelevant to the issue at hand.

It is true that because there is this "synergistic interaction on a complex industrial society of federal and state statutory plans having diverse aims,"[2] there is potential confusion when identical terms have divergent meanings in each plan. But just as the definition of these terms in the MSCA regulations did not control the issue of employment for purposes of Texas worker's compensation

---

[2] *White v. Excalibur Ins. Co.*, 599 F.2d 50, 51, (5th Cir 1979) (by Rubin, J.).

liability regulations, these definitions can not control whether Barnett was an employee of Bullock for purposes of Bullock's tort or worker's compensation liability. But these definitions *are* controlling insofar as coverage under the Gramercy policy is concerned.

Was Barnett an employee *of Bullock* for coverage purposes? The definition of "employer" is clearly broad enough include Bullock: one who is "engaged in a business affecting interstate commerce who owns *or leases* in connection with that business..." 49 C.F.R. §390.5. Bullock hired and paid Barnett to assist in driving Bullock's tractor and, regardless of whether Barnett was an independent contractor within the meaning of Louisiana worker's compensation and tort law, he was an employee of Bullock for purposes of the insurance contract.

MIGA argues that Bullock was a "fellow employee" of Barnett and is therefore excluded from coverage for this additional reason. 49 C.F.R. §390.5 defines "employee" as "any individual *other than an employer..."* As we have seen, Bullock was Barnett's employer for coverage purposes. In *Ooida*, however, the Court found that because the language of the statute, 49 U.S.C. §31132(2) differed from that of the regulation, the statute predominated and therefore the Court held the owner and sole proprietor of the tractor was a fellow employee of his tandem driver. 579 F.3d at 474-475. The Court need not resolve this issue since coverage is excluded based on Barnett's status as an employee of Bullock.

In conclusion, the Court finds, for the reasons given, that MIGA is entitled to summary judgment finding that Gramercy did not provide liability insurance coverage for this accident.

*Duty to Defend*

MIGA also moves for summary judgment on the issue of its duty to defend. When a policy is found to exclude coverage for the claims alleged in lawsuit, the insurer no longer has a duty to defend that suit. *Audubon Ins. Co. v. Terry Rd. Wine & Liquor, Inc.*, 875 F. Supp. 1243 (S.D. Miss.

1995), aff'd in part and rev'd is part on other grounds, 68 F.3d 469 (5th Cir. 1995).

*Conclusion*

For the reasons stated, MIGA's Motion for Summary Judgment is GRANTED in all respects.

Signed in Baton Rouge, Louisiana, on <u>January 5, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**